UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NANCY D. BEACH and HM 2 JON L. BEACH, | § § § § | |
| Plaintiffs, | § § | |
| v. | § | CIVIL ACTION NO. H-08-cv-2358 |
| GREEN TREE SERVICING LLC f/k/a CONSECO FINANCIAL SERVICING CORP., | § § § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Dismiss and Alternatively Motion to Compel Arbitration (Doc. No. 9) and Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. No. 18.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds Defendants' Motion to Strike should be denied, Defendant's Motion to Dismiss should be granted as to Plaintiff Nancy Beach, and Defendant's Motion to Compel Arbitration should be granted as to Plaintiff Jon Beach.

### I. BACKGROUND

This lawsuit arises out of Defendant's alleged violations of the Service Members Civil Relief Act ("SCRA"), 50 U.S.C. App. § 501, et seq. Plaintiffs are Jon Beach, a reservist in the United States Navy, and his wife, Nancy Beach.[1] Plaintiffs jointly owned

---

[1] For the purpose of this Motion only, the Court will draw the relevant facts from Plaintiffs' Amended Complaint. (Doc. No. 17.) Defendant has filed a Motion to Strike Plaintiff's Amended Complaint because it was filed without permission of the Court. (Doc. No. 18.) Because Federal Rule of Civil Procedure 15 dictates that motions to amend should be freely granted, and because of this Court's practice to decide cases on the merits rather than on technicalities, Defendant's Motion to Strike should be denied.

a manufactured home that was financed by Defendant Green Tree Servicing LLC ("Green Tree"). Nancy Beach and Defendant executed a financing agreement for the manufactured home ("the Mortgage"). (Doc. No. 10, Ex. 1.) From August 2004-2007, Nancy Beach was involved in two separate bankruptcy proceedings. During the bankruptcy proceeding, on September 3, 2005, Jon Beach was called to active duty in New Orleans as part of the relief effort following Hurricane Katrina. On September 15, 2006, Plaintiffs notified Defendant Green Tree, through counsel, that Jon Beach had been called to active duty. Defendant's only response was to extend payments owed by Plaintiff for thirty days. On March 12, 2006, Jon Beach was summoned to Camp LaJenune, North Carolina, prior to overseas deployment. While at Camp LaJeune, Jon Beach suffered a Line of Duty ("LOD") injury.

On March 13, 2006, Defendant filed the first of two lawsuits against Nancy Beach in the District Court of Austin County, Texas, 155th Judicial District. On July 31, 2006, Nancy Beach filed a Pro Se Motion for Stay, which was granted at a hearing on August 1, 2006. The Court also gave Nancy Beach a ninety-day extension from the time of the LOD injury. Plaintiff Nancy Beach and Defendant agreed to reinstate the stay, reduce the interest rate to six percent and settle their other disputes. Following this agreement, on November 15, 2006, Defendant filed a notice terminating the stay, citing Nancy Beach's failure to make payments in September, October, and November 2006. Plaintiffs argue that payments actually were made for September and November 2006, and that the October payment fell within the ninety-day LOD period. Defendant filed a second lawsuit against Plaintiff on January 12, 2007 in the District Court of Bastrop County, Texas, 335th Judicial District ("the Second State Lawsuit").

Plaintiffs allege that Defendant has grossly, willfully, and intentionally violated their rights under the SCRA. Defendant moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 15, or, in the alternative, to compel arbitration.

## II. ANALYSIS

### A. The *Rooker-Feldman* Doctrine

Defendant first argues that this Court does not have subject matter jurisdiction over Nancy Beach's claims because its review is barred by the *Rooker-Feldman* doctrine.[2] Defendant argues that Nancy Beach filed a counterclaim against Defendant in the Second State Lawsuit that is substantially identical to her Complaint in this lawsuit. Defendant responded by filing a Plea in Abatement and Motion to Compel Arbitration. At a contested hearing, Nancy Beach filed a Response to Defendant's Motion. The state court then ordered Plaintiff to submit the matter to arbitration within sixty days, and that, if she did not do so, the case would be dismissed with prejudice. When Nancy Beach failed to submit the matter to arbitration, the state court dismissed her case on July 9, 2008.

According to Defendant, Nancy Beach is seeking the same relief in this Court that she sought in her counterclaim filed in the Second State Lawsuit. (Doc. No. 10, Ex. 7.) Defendant contends that Nancy Beach is seeking this Court's review of the state court decision, which is barred by the *Rooker-Feldman* doctrine. Nancy Beach responds that she is not seeking review of the Second State Lawsuit; rather, she argues that she seeks

---

[2] Defendant concedes that its *Rooker-Feldman* argument does not apply to Jon Beach's claims because he was not a party to the Second State Lawsuit. For the same reason, its res judicata defense does not apply to Jon Beach.

3

relief pursuant to Federal Rules of Civil Procedure 60 and 11 in regards to the fraud and misconduct of the attorneys of record for Defendant during the Bankruptcy proceedings.

The *Rooker-Feldman* doctrine mandates that no court of the United States—other than the United States Supreme Court—can entertain a proceeding to reverse, modify, or otherwise engage in appellate review of, a state court decision. *See Johnson v. Degrandy*, 512 U.S. 997, 1005-1006 (1994).[3] Under the doctrine, federal district courts lack subject matter jurisdiction to consider collateral attacks on state court judgments. *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994). The rule not only limits the district court's review of actions in federal court that explicitly seek review of state court decisions, but also those "in which the constitutional claims presented ... are inextricably intertwined with the state court's grant or denial of relief." *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986) (internal quotations and brackets omitted). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, the Supreme Court limited the *Rooker-Feldman* doctrine's application to cases where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." 544 U.S. 280, 286 (2005).

There is no doubt that Nancy Beach was the losing party in the Second State Lawsuit. While Nancy Beach argues that she is not appealing the state court's decision, her Complaint in this lawsuit is premised on the same arguments as her unsuccessful counterclaim in the Second State Lawsuit. *See Williams v. Liberty Mutual Ins. Co.*, 2005 WL 776170, *2 (5th Cir. 2005). The state court considered whether Defendant's counsel had violated the SCRA §§ 527 and 533 and still found that Nancy Beach must submit to

---

[3] The doctrine is named for two United States Supreme Court decisions: *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 415-416 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).

arbitration. When Nancy Beach failed to do so, the state court entered a judgment against her. (Doc. No. 10, Ex. 8.) If Nancy Beach disagreed with the state court's decision regarding her counterclaim, the appropriate forum to challenge the judgment would be the state appellate system, not this Court.[4]

### B. Defendant's Motion to Compel Arbitration

Defendant contends that Jon Beach's claims should be submitted to arbitration because Jon Beach is bound by the Mortgage's arbitration clause. Defendant argues that the source of Jon Beach's SCRA claims is the Mortgage. In response, Jon Beach argues that, since he is not a party to the Mortgage, he should not be bound by its terms.

Jon Beach claims relief under two provisions of the SCRA, sections 527 and 533. Section 527 limits the amount of interest that can be incurred on an obligation held by a service member, or a service member and his spouse jointly, to six percent. 50 U.S.C. App. § 527. Section 533 applies to mortages on property owned by service members. 50 U.S.C. App. § 533.

> The arbitration clause contained in the Mortgage reads as follows:
>
> All disputes, claims or controversies arising from or relating to this Contract or the parties thereto shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration except as provided herein .... The

---

[4] In Plaintiffs' Response, Nancy Beach argues that the *Rooker-Feldman* doctrine does not prevent a federal court from reviewing a state court decision based on deceptive information. In support of this argument, plaintiffs cite *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006). *Todd* is, however, distinguishable since, in that case, the plaintiff's federal lawsuit was against the law firm that filed the allegedly false affidavit in the underlying litigation, not the original state court defendants.

> parties agree and understand that all disputes arising under case law, statutory law and any other laws including, but not limited to all contract, tort and property disputes, will be subject to binding arbitration in accord with this Contract.

(Doc. No. 10, Ex. 1.) The Mortgage is governed by Texas law. (*Id.*)

In deciding whether to compel arbitration of a dispute, the Court is required to use a two-step inquiry. "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal citation omitted). The Court does not consider the merits of the underlying action when conducting the two-step inquiry. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). The first step of the inquiry, whether the parties agreed to arbitrate the dispute, requires the Court to determine "whether there is a valid agreement to arbitrate between the parties; and . . . whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

Defendant asserts, and Plaintiffs do not contest, that the Federal Arbitration Act ("the Act") governs the arbitration clause. Under the Act, whether an arbitration agreement is binding on a nonparty is a gateway matter to be determined by the courts rather than the arbitrators. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-7 (1964). Both federal and state courts have noted that it is not clear what substantive law governs whether a non-party must arbitrate. *In re Weekly Homes*, 180 S.W.3d 127, 130-131 (Tex. 2005) (citations omitted) (noting that, under the FAA, state law typically governs whether a litigant agreed to arbitrate, and federal law governs the scope of any arbitration clause). The Texas Supreme Court has chosen to apply state law, which is

6

largely consistent with federal law. *Id.* at 131. The Fifth Circuit has also, on occasion, suggested that the question of the scope of an arbitration provision is necessarily governed by state law. For example, in *Banc One*, the Circuit stated that the questions of "whether there is a valid agreement to arbitrate . . . and . . . whether the dispute in question falls within the scope of that arbitration agreement" are both "decided according to state law." *See Banc One*, 367 F.3d at 429 (citing *Will-Drill Res., Inc.*, 352 F.3d at 214)). In those cases in which the Fifth Circuit has applied state law to the question of scope, however, it has nevertheless observed that "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" *See, e.g., Webb v. Investacorp, Inc.*, 89 F.3d at 257-58 (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)). This Court will apply Texas law to determine if Jon Beach's claim fall within the scope of the Mortgage's arbitration clause.

In Texas, nonparties may be bound to an arbitration clause when the rules of law or equity would bind them to the contract generally. *In re Weekly Homes*, 180 S.W.3d at 129. A nonparty may be compelled to arbitrate "if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions." *Id.* at 131 (quotations omitted). Whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim. *Id.* at 131-132 (citations omitted). Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it. *Id.* at 132 (citations omitted). Claims can be brought in tort, and litigated before a court, if liability arises from general obligations imposed by the law. *Id.* (citations omitted). A nonparty may seek or obtain

7

direct benefits from a contract by means other than a lawsuit. The analysis here focuses on the nonparty's conduct during the performance of the contract. *Id.* at 132-33 (citations omitted).

As an initial matter, the Court notes the contradiction in Jon Beach's position. He argues in his Complaint that he has a fifty percent interest in the property; however, he also argues that he is not bound by the terms of the Mortgage. Jon Beach's claims arise solely from the Mortgage that existed between Nancy Beach and Defendant. His section 527 claim is premised on the interest rate charged by Defendant, which was stated in the Mortgage. (Doc. No. 10, Ex. 1.) Further, his section 533 claim, according to the statute, requires the existence of Mortgage. He complains that Defendant failed to accept certain payments under the Mortgage which resulted in a foreclosure on the property that was subject to the Mortgage. Beach could not sue Defendant for failing to act within the SCRA's limitations on mortgage terms if there was no Mortgage. The Court therefore finds that Jon Beach's claims that Defendant violated the SCRA must be submitted to arbitration.

### III. CONCLUSION

For these reasons, Defendant's Motion to Strike Plaintiff's Amended Complaint is **DENIED**. Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff Nancy Beach. Defendant's Motion to Compel Arbitration is **GRANTED** as to Plaintiff Jon Beach.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 17th day of June, 2009.

8

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**